Mr. Brady, are you there? Yes, Your Honor. You have asked for 10 minutes of argument. Yes, Your Honor. We will grant that. You should know that the general policy of the court with respect to pro se arguments is 5 minutes and where necessary the time is expanded and in your case you have requested it. Thank you, Your Honor. You will have that. Your Honor, can I do it in 8 minute and 2 minute rebuttal, please? Yes, you can. Thank you, Your Honor. Please proceed, Mr. Brady. Thank you, Your Honor. The case against Barry Ostrager does not stem from erroneous decisions. It stems from his refusal to adjudicate the personal guarantee issue and defense after I refused to accept the landlord's $50,000 offer to settle. The refusal was a violation of his mandated duty to make a decision in the case before him. I ask Your Honor to turn to page 22 of the appendix where it's proven that the personal guarantees were voided through the admissions of the IGS realties attorney. Okay, so it says, so let's begin at the beginning. This is Mr. Fox speaking. In 2001, Mr. Ostrager placed an ad in the New York Times. He, Brady, goes to the space, checks them out, and puts the deposit down on the basis. Then he speaks to his father, who has great experience in real estate, who tells him that this is a special garment district for zoning, so he better check out whether the use is permitted. So he puts his stuff on the check and tells Mr. Ifrah he wants to do his due diligence, which he does. And he checks the whole building from top to bottom, legal, the physical condition, and concludes that everything is fine. The building's legal. The physical condition is legal. Everything else is in good and satisfactory condition. So he writes another check and rents the space. After that, the same year and the following year, he rents two other spaces. And then Mr. Fox also admits there's no doubt that at the time after the leases were signed, Mr. Ifrah started renting the space and had to pay lots of fines to do so. And it also mentions, so after 2007, he had no certificate of occupancy of any sort. Okay, Mr. Brady, your two minutes are up, but I'm the first questioner, but I'd like to see an opportunity to continue your argument. Thank you, Your Honor. So my point is, what Judge Osterger did not do, and I ask you judges to do this for me. I would even drop the case against Mr. Osterger if you just do this, Your Honor. These facts, okay, that are admitted to meet the personal guarantees were voided. And the issue's never been adjudicated. Judge Osterger simply ignored it. But you know, based on the law, okay, it says a guarantee will not be enforced where there's a modification impermissible increasing the guarantor's risk without his consent. And then another part of the law is there can be no doubt that a guarantor, when sued alone by a creditor, can successfully resist by showing that the creditor, on his part, totally failed to perform his obligation to the principal. In other words, the guarantor may always assert a total failure of consideration. This is because the guarantor is not liable unless the principal is bound. Furthermore, this court also stated that held that a personal guarantor of a lease is unenforceable when the occupancy is illegal and in violation of the certificate of occupancy. Well, he made the meeting hall illegal. He made them valueless his asset. It was a total failure of consideration. A meeting hall without a valid certificate of occupancy is null and void. The building was – the contract makes clear it was taken as is, conditions undisputed. That's why he offered me the money. Okay? So all I'm asking you on is if you would just, you know, as appellate division judges at such a prestigious level, I mean, to protect somebody, they were voided as a matter of law. Okay? And so – and it's never been adjudicated. Now I ask you, if you would, to turn to the jury interrogatory, and that's Appendix 127. This is really important for the judges to look at. I'd be grateful for that. Okay? So you already know through admission it was adjudicated through his actions. But in this case now, none of these questions have anything to do whatsoever whether the personal guarantees were enforceable. Question number one, this was – an extrinsic issue came up, and question number one said, do you find a favorite plaintiff object claim against the defendant for breach of contract? Well, that breach of contract was operating as a meeting hall, an illegal banquet hall, they determined, based on the jury instructions that were given them. But even through, that has nothing to do with whether the personal guarantees were enforceable. The one thing I need the jury – if you would write down, please, is Brady v. Shindland. Okay? And this is 20-DB07047. So in other words, when they say that this case went to the Court of Appeals, the only thing that went to the Court of Appeals, it wasn't the personal guarantee issue because the personal guarantee issue was never adjudicated. This pertains to, and it's proven in this document, where it's in opposition. What the document is, it's in opposition to defendant appellate's motion for leave to appeal to the Court of Appeals. The issue here is whether the leases were guaranteed, which is proven by looking at it. For example, it says the appellate division – one heading says the appellate division did not reverse the jury's finding that defendant appellate was operating an illegal banquet hall. So that's all that issue pertains to. That has nothing to do with me in saying this extrinsic thing that suddenly the claim had nothing to do with that. The claim was only pertaining to the personal guarantees. And if you look at question three, please – okay, it says – I'm sorry. Question number three states – let's see. Okay. Do you find in favor of defendant's claim that IGS will be fraudulently induced to sign the leases and guarantees? Well, the jury instructions by Dadausisus said if you find that he was operating as an illegal banquet hall, there can be no fraud in the inducement. So that's question two. And question three – I'm sorry. That's question three. Question two is also another weird one. It has nothing to do with the case. It says do you find in favor of defendant in connection with his claim that plaintiff reached the implied warranty that the premises were split for use? So that was another made-up question that wasn't anything. As you know from what I just read, there are no implied warranties in commercial leases. That's why we did our due diligence. So none of these things were here, okay, or pertained to whether the personal guarantees were enforceable. And one of the things that's really important to note is that the judge said that he was going to give us – specifically, he made sure that he said, okay, that – well, as far as the meeting hall, he specifically said that if you find that they were operating as banquet halls, if you find that the premises were not being used as meeting halls, Mr. Brady cannot recover any damages for fraud to the inducement. So that question pertains to this extrinsic issue that has nothing whatsoever to do with the personal guarantees. And there's one other last thing. I'm so grateful for you giving me the time. It says in the jury instructions, I told you, who does that? Hidden jury interrogatory. None of my actual claims and defenses were in it. So I really got – not only that, I got cheated out of my chance of getting it. As the landlord admits, he converted the whole building, making more money as office use. I got cheated out of – You have one minute left, sir. I got cheated out of my negligence and gross negligence claim. However, I need to ask the court. He said that he was indetermining whether Brady breached the guarantees for the leases by not paying the full rent. You must consider whether Brady was constructively evicted from the premises pursuant to the instructions I give you. So, Your Honor, if you see, he said he was going to also put that on, and it's missing from the interrogatories. Do you see that that's not a question on the interrogatories? Thank you. Thank you for that. I will – I have just one question, and then I will ask Judges Sack and Nardini if you have a question. And that is, as a matter of process, would your concerns more properly be addressed on direct appeal to a state appellate court rather than to a federal court? I did that, Your Honor. Okay? Nobody's addressed the personal guarantee issue. Okay? So, like I said, nobody could affirm something that's never been adjudicated. The three-question jury thing had nothing to do with it. They – to be honest with you, you know, and I know there's a lot of things said about me, but you can look online, unfortunately. And, you know, but I don't – they won't – everybody's had silence, just like Judge Osterger, and won't adjudicate it. You cannot let something go like that. When you saw what I showed you, okay, under the law, the guarantees were voided, and Judge Osterger simply and repeatedly refused to adjudicate it, and the same thing happened in the state courts. They affirmed this jury decision, which always pertained to, as I told you and as is proven in the document that I gave you against Brady v. Schindler, 20th CD 07047. This document shows that this thing, that question number one pertained to the place being used as a banquet hall. That's not a ground staff that we have to pay on a personal guarantee. Thank you. We have – I have your argument, Judge Sack. Any questions? No questions. Judge Nardini? No, thank you. You will have, Mr. Brady, two minutes in rebuttal. We'll now hear from your adversary. Thank you, Your Honor. Good morning, Your Honors. I'm David Lawrence III. I'm an assistant solicitor general, appearing on behalf of Appley, Justice Barry Osterger. The district court correctly dismissed the complaint under the Roker-Feldman doctrine and based on judicial immunity, and also correctly denied leave to amend as futile. Roker-Feldman applies because all four elements set forth by this court in Hoblock v. Albany County Board of Elections are met here. In particular, the plaintiff here lost in state court when he suffered an adverse judgment of $1.7 million. He brought his present federal action after that adverse state court judgment. He claims he was injured by that judgment, and he asked the federal courts to review and reject the state court judgment by awarding him damages against the judge who presided over the state court action, namely Justice Osterger. And in fact, this court has frequently applied Roker-Feldman to bar federal damages actions against state judges for their alleged conduct in presiding over state court actions. Plaintiff's action here is also barred by judicial immunity. Such immunity applies where the relevant action is judicial in nature, and it was not taken in the complete absence of jurisdiction. Both elements are met here. Justice Osterger's decision to let the jury resolve plaintiff's claim that his landlord had acted unlawfully, Justice Osterger's issuance of allegedly erroneous jury instructions, and his declining to advise the New York Court of Appeals that his jury instructions were reportedly wrong are all judicial acts. Now, on this oral argument, the plaintiff argues for the first time, I don't think he's squarely raising his brief, he's complaining about the content of the jury interrogatories. That's another act that is a judicial act that would also be covered by judicial immunity. And in fact, as a justice of the New York Supreme Court, Justice Osterger plainly had a jurisdiction over the state court action here, which is another basis on which judicial immunity applies. In addition to the extent the plaintiff sues Justice Osterger in his official capacity, that claim would be barred by the 11th Amendment. Okay, Mr. Lawrence, your two minutes are up. I have a question. This is Judge Kastin. How would you respond to the argument that Mr. Brady's claims are barred by Rooker-Feldman, given that they don't seek to actually overturn the state court judgment? Well, what they do seek your honor is to get damages from Justice Osterger on the basis that the state court judgment was erroneously issued. This court has frequently applied Rooker-Feldman in that circumstance and recognized that you can't get around Rooker-Feldman by not expressly seeking to overturn the state court judgment, but instead seek damages based on the fact that the judgment was erroneous. I have no further questions. Judge Stack? No questions. Thank you. Judge Nardini? No, thank you. Thank you, Mr. Lawrence. We will now hear from Mr. Brady, who has two minutes for rebuttal. Thank you, your honor. Your honors, first of all, as I had said before, these defenses were not made in their motion to dismiss. So had there been any truth in that claim, they would have made it then. Secondly, again, as I said, your honors, and where I really need you to be just, first of all, I was thinking I was suing in an individual capacity, I'm sorry, his official capacity, being sued individually. Okay, and as you know by what I read to you, your honors, okay, there was, okay, the admission by Mr. Foss proved the personal guarantees were void as a matter of law and public policy. He admitted everything with due diligence was done, and then he turned to the inter-legal office building, destroyed the certificate of occupancy, and Judge Ossinger never adjudicated that issue, and it was not given to the jury. You can see by looking at the jury sheet, it was not given to the jury. It's very important, your honors, I ask you to please acknowledge that. In other words, he had said that he was going to give, okay, whether they were constructive. The jury needed to consider whether he was constructively evicted. You see that's also not on the jury sheet. So nobody ever adjudicated that the personal guarantees were enforceable. Secondly, okay, frankly, okay, it was permitted to be used fraudulently that the jury finding in question number one pertained to the personal guarantees, where I told you the document that you're obligated to look at, please, proves conclusively they knew that the question number one pertained to only the claim that we were operating as an illegal banquet hall. So even true, I'm not asking you to reverse that, it still wouldn't mean that the personal guarantees were enforceable. And I lost my life savings without there ever being an adjudication that they were enforceable. And you see that. So I plead with your honors, okay, as I said, I'll even drop the claim, but ICS realty can't get away with fraud in doing that. Thank you. Thank you. Thank you, Mr. Brady. Your time is up. If you have a last sentence, please give it, last couple of sentences. I just lost my life savings because of that, Your Honor. And you know by the fact, the information that I read to you, okay, he destroyed my building. I had 25-year leases and six years into them, he destroyed them and made them valueless assets and illegal to occupy, which means the personal guarantees were voided, as well the case law says. Thank you so much. Thank you both for your arguments. The court will reserve decision.